## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MOTIR SERVICES, INC.

                Plaintiff,

   v.

GEORGE EKWUNO,

                Defendant,

   and

THE NOBLE HOUSE, LLC,

                Defendant.

Civil Action No. _____

## COMPLAINT

For its Complaint against Defendant George Ekwuno ("Ekwuno"), sole owner of Defendant The Noble House, LLC and Defendant The Noble House, LLC ("Noble House") Plaintiff Motir Services, Inc. ("Motir"), by counsel, states as follows:

## NATURE OF THIS ACTION

1.      Motir files this claim for money damages resulting from Defendants' breach of a contractor agreement ("the Contract") between Defendants and Motir, requiring Defendants to perform extensive renovation and repair work to Motir's office building located at 1508 E. Capitol Street, NE, Washington, D.C. 20003.  Defendants failed to complete this project according to the clear terms of the Contract, causing Motir to incur significant costs related to the costs of purchasing additional materials, the ten month delay in completion, and ultimately completing the repair and maintenance work set forth in the Contract through alternative sources.

**PARTIES**

2.      Plaintiff Motir is a Washington, D.C. corporation with its principal place of business in Washington, D.C., currently located at 1508 E. Capitol Street, NE, Washington, D.C. 20003. Motir is an established performance-based provider of a broad range of contract services to federal, state, municipal and commercial clients.

3.      Upon information and belief, Defendants are now and at all times relevant to this suit residents of the State of Maryland. Defendant Noble House incorporated in Maryland in June 2011; its company number is w14139976. Noble House's address is 8099 Snouffer School Road, Gaithersburg, MD 20879. Upon information and belief, the home address for Defendant Ekwuno is 9000 Green Run Way, Gaithersburg, MD 20879.

4.      Upon information and belief, Noble House merely serves as an alter ego for Defendant Ekwuno, with a co-mingling of assets and no separation of identities.

5.      To the best of Motir's knowledge, Defendant Ekwuno is an experienced contractor operating in the District of Columbia, Maryland, and Virginia.

**JURISDICTION AND VENUE**

6.      This Court enjoys subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

7.      This Court enjoys personal jurisdiction over the Defendants because the breach of contract and fraud actions took place in the District of Columbia, specifically in connection with Motir's office building located at 1508 E. Capitol Street, NE, Washington, D.C. 20003.

8.      This Court enjoys venue under 28 U.S.C. § 1391(a)(2) because all or a substantial portion of the facts giving rise to the causes of action alleged herein arose in whole and/or part in the District of Columbia.

## FACTS

### 1508 E. Capitol Street, NE

9.      Motir purchased 1508 E. Capitol Street, NE on June 19, 2008 for use as its corporate headquarters.

10.     On April 9, 2011 a fire occurred at 1508 E. Capitol Street, NE, resulting in significant damage to the inside and outside of the building.  Corporate personnel could no longer work in the building and most of the personnel were relocated to another Motir office building located at 9225 Hampton Overlook, Capitol Heights, MD 20743.

11.     Motir intended this relocation to last only for the duration of the anticipated renovation.  In this vein, Motir extended the lease at 9225 Hampton Overlook until July 2013, though it had intended to end this lease in 2011 and consolidate the personnel housed there.  Due to unforeseen delays caused by Defendants, Motir was forced to extend this lease even further, from August 2013 to April 2014.

12.     It was also necessary for Motir to reoccupy an office within the District of Columbia by June 2013 in order to successfully perform its contracts located within the District of Columbia.

### Engagement Of The Noble House, LLC For Reconstruction Of 1508 E. Capitol Street, NE

13.     In the months after the fire Motir focused on cleaning up the building and engaging an architect to draw up plans for a renovation.   Motir submitted these plans to the D.C. Department of Consumer and Regulatory Affairs ("DCRA"), which handles the necessary permits for large building renovations, on October 31, 2011.  It was not until April 24, 2012 that DCRA approved Motir's permit for the renovation plans.  At that point, Motir began looking for a contractor to complete the renovation.

14.     Defendant Noble House submitted to Motir in November 26, 2012, a price quote, signed by Defendant Ekwuno, to supply all labor and material for the reconstruction of 1508 E. Capitol Street, NE at fixed price of $450,000, to be performed per Motir-approved plans and specifications.

15.     The price quote included a general overview of the scope of work to be performed, such as: (1) demolish and clean up compromised structure, (2) salvage materials as called for by plans, (3) supply all material and labor to build structure per plans, (4) supply all materials and labor to install elevator per specifications, and (5) supply and install all finishing material per plans.

16.     The price quote stated an expected completion date "within 6 (six) months of commencement.  The only exceptions are unforeseen extenuating weather or environmental/governmental situations beyond our control."

17.     On December 12, 2012, Defendant Ekwuno sent to Motir a cost breakdown and a preliminary schedule.  The cost breakdown, accounting for the total $450,000 quoted price, consisted of the following: Demolish - $40,000, Plumbing & Sprinkler System - $48,000, Elevator - $81,000, Electrical - $30,000, HVAC - $30,000, Construction (Labor/Materials/Finishes) - $180,000, Miscellaneous Contingency - $5,000, and Profit - $36,000.

18.     Shortly thereafter, on December 13, 2012, Motir and Defendant Noble House, through the signature of Defendant Ekwuno, executed the Contract.  This agreement memorialized the parties' intent to enter into a contract for renovation and restoration of Motir's office building located at 1508 E. Capitol Street, NE, Washington, D.C. 20003.  The Contract includes a number of provisions emphasizing the importance of timely completion and strict

performance of the Contract for the amount of $450,000, as detailed in the quote presented by

Defendant Ekwuno. The Contract included as exhibits the necessary drawings, photos, and other

information required for successful performance of the Contract.

19.     Specifically, under Section 4, Time of Performance, the Contract stated that the

commencement date of the Contract would be the same as the effective date of the Contract, or

December 13, 2012, and anticipated that the work under the Contract would be substantially

completed no later than six months after commencement, or by June 13, 2013. The Contract

emphasized the importance of completing the project in the agreed-upon timeframe, stating

"[t]ime is of the essence in the performance of this Contract Agreement. There shall be no

extension of time for Contractor to perform the work without written consent from Owner

indicating precise nature and length of time allowance or other adjustment to the Contractor's

[S]chedule of Work made in accordance with the Contract Documents."

20.     Section 5 of the Contract included Contractor Warranties, wherein Defendants

warranted as follows: "The Contractor warrants to the Owner that all Work performed under this

Agreement will conform to the requirements of the Contract Documents. Contractor warrants

that all Work shall be performed in the most sound and workmanlike manner, and will adhere to

established construction industry standards and applicable trade codes. Non-conforming Work,

which includes unauthorized work modifications and material substitutions, shall be considered

'defective' for the purposes of this warranty."

21.     Section 5 of the Contract further warranted that "materials and equipment

furnished, installed, or otherwise provided under this Agreement will be of good quality and

new, unless directed by the Contract Documents" and the work performed by would be "free of

defects related to the requirements contained in the Contract Documents," for a period of at least one year from the date of completion and acceptance of the project by Motir.

22.     Section 6 of the Contract required Defendant Noble House to submit to Motir invoices on a monthly basis as a prerequisite to receiving Progress Payments.  This Section also obligated Defendant Noble House, in submitting contractor invoices, to guarantee and certify that all labor and materials used on the project had been paid for through the period covered by all Progress Payments issued up to that time, and to provide assurances to Motir to evidence this guarantee.  Further, the Contract provided that in the event of a default by Noble House in the proper performance of work under the Contract, thereby causing delay or damages to Motir or other subcontractors working on the project, Noble House would be liable to Motir for any and all loss and damages so sustained.

23.     Section 6 of the Contract also included the following draw schedule: $50,000 at the signing of the contract, $100,000 at the start of new construction, $70,000 at completion and inspection of electrical/plumbing rough-in and HVAC, $80,000 at completion and inspection of elevator installation, $70,000 at completion of drywall/trimming/painting, and $80,000 at final inspection and certificate of occupancy.

24.     Section 8 of the Contract reserved for Motir the right to reject any Requests for Adjustment sought by Defendants, and, in the event of such occurrence, required the Defendants to continue to perform the work under the Contract in accordance with the Contract Documents.

25.     Under Section 10 of the Contract, the parties agreed the Contract would be governed by and interpreted under the laws of the District of Columbia.

**Defendants Breached The Contract**

26.     Beginning on January 11, 2013, Defendant Ekwuno submitted a series of change orders to Motir, for all of which Motir paid to Defendant Ekwuno additional monies above the agreed-upon Contract price.  However, when Defendant Ekwuno abandoned the project and Motir took over the construction, Motir discovered that a large percentage of the work designated for completion under these change orders was either never completed or completed in substandard fashion, often with substandard materials.

27.     An example of the poor workmanship and substandard construction work performed by Defendant Ekwuno, in violation of the Contract requirements, among a multitude of others, was the damage caused to the Information Technology systems' wiring.  While the renovation of 1508 N. Capitol Street NE was ongoing, on or about August 2013, Motir's Information Technology team oversaw the installation of the wiring for the Information Technology systems by Gaston Security, Inc.  Thereafter, Defendant Ekwuno caused significant damage to this wiring while attempting to install the electrical wiring, including: (1) pinched wires; (2) incorrect installment of dry wall over access points; and (3) improper removal of this wiring and replacing it with electrical wiring.

28.     Additional poor workmanship and substandard construction work known by Motir as of the date of this Complaint includes:

- Leaking Roof.  There have been consistent leaks from the roof since Motir returned to occupy 1508 N. Capitol St., NE.  Motir consulted with contractor Roof Solutions who informed Motir that in order to prevent future leaks the entire roof will need to be replaced.

- Uneven Flooring.  The 2nd, 3rd, and 4th story floors of 1508 N. Capitol Street, NE are uneven.

- Incorrect Equipment.  Defendant Ekwuno improperly installed the following residential grade (not commercial grade as required for this office building) equipment: (a) windows; (b) water heater; (c) furnace; (d) sump pump (unit

installed by Defendant Ekwuno did not meet D.C. code requirements; Motir replaced it in March 2014); (e) doors (discussed in more detail below).

- Faulty HVAC. The HVAC installed by Defendant Ekwuno contain the following issues, as known to Motir at present: (a) two of the four units contain copper fuses, which present a fire hazard; (b) the split units have required repair service three times in the past year, and one of the units is currently leaking water in the server room; (c) Defendant Ekwuno improperly installed wiring that is not strong enough to hold these units, resulting in the air conditioning units not being grounded and creating a potential fire hazard.

- Improperly Installed Furnace. Defendant Ekwuno did not properly install the furnace, resulting in the fresh air intake being parallel to and next to the exhaust pipe, essentially pulling the exhaust air right back into the building.

- Improperly Installed Doors. Defendant Ekwuno did not install the commercial grade metal doors as expected by construction industry standards, instead he installed residential grade wood door jams nailed into steel studs (nails, not screws as would be expected in the construction industry), causing the doors to stick and door frames to move when the doors are opened. In addition, the doors are improperly hung, and not level.

- Improperly Installed Insulation. Defendant Ekwuno installed an inadequate amount of insulation in the ceiling and exterior walls, and failed to include deadening material in the interior walls.

- Faulty Electrical Systems. In order to pass D.C. electrical inspection, Motir needed to redo approximately 72% of the electrical work completed by Defendant Ekwuno, including replacing the undersized trough (the main feed into the building) to meet the electrical inspection requirements.

- Improperly Installed Elevator Shaft. Defendant Ekwuno installed a misaligned elevator shaft which Motir was forced to correct before the elevator could be installed.

- Improperly Installed Elevator Pit. When installing, Defendant Ekwuno failed to properly seal the elevator pit.

- Improperly Installed Gutters. Defendant Ekwuno improperly attached the gutters, causing water to run down the back of the building and the stucco to crack.

- Faulty Back Exterior Doors. These doors, installed by Defendant Ekwuno, do not have a drip edge as standard in the construction industry. As a result, in the event of heavy rain the water floods through the back door and causes the alarm sensor, located on the back door, to short out.

**Defendant Ekwuno Fraudulently Misrepresented
The Project's Progress And Payments To Vendors**

29.      At the start of the project Defendant Ekwuno changed the locks on the building,

ostensibly as a security measure but without first receiving permission from Motir, so no one

from Motir was able to enter without Defendant Ekwuno present.  This action was not

anticipated under the Contract.

30.      On March 19, 2013, Defendant Ekwuno requested 50% of the final draw in order

to keep the project moving forward, while acknowledging that the Contract called for the final

draw to be paid at the end of the project.  Defendant Ekwuno claimed that much of this draw was

needed for materials for the project.  Motir paid Defendant Ekwuno the requested amount

because of its eagerness to see the project completed in a timely manner.

31.      Nearly three months later, on June 18, 2013, Defendant Ekwuno again emailed

Motir stating he would not be able to move forward with the project without the balance of the

final draw.  Defendant Ekwuno claimed that much of this draw was needed for materials for the

project.  In this email he stated the project was "exactly 6 weeks away from completion" and that

if "we have to stop and restart we will be set back at least a month or more from the original

completion target of end of July."

32.      Because the project was running significantly behind, Motir was forced to rent

office space in the District of Columbia to properly perform its contracts located in the District of

Columbia.  Motir rented office space at 601 Pennsylvania Avenue, Suite 915, Washington, D.C.

20004, from May 2013 to May 2014.

33.      In response to request for additional monies from Defendant Ekwuno on July 24,

2013, Motir began paying vendors directly for outstanding bills, specifically the HVAC,

sprinkler & fire alarm, and steel vendors.  Defendant Ekwuno claimed in an earlier email dated

March 4, 2013 to have paid these vendors, but had not done so, despite having already received 76% of the total Contract price, or $344,100, from Motir by July 2013.

      34.     On July 26, 2013, Motir received a status report from Defendant Ekwuno stating (again) that the renovation was six to eight weeks from completion.

      35.     One significant issue related to the installation of the elevator, ordered from Schindler Elevator Corporation ("Schindler"). Defendant Ekwuno received four payments from Motir for the elevator: $40,500 on January 17, 2013, $4,150 on February 19, 2013, $40,000 on April 10, 2013, and another $4,150 on August 22, 2013, for a total of $88,300 paid to Defendant Ekwuno for an elevator that cost $62,671. Yet, on December 16, 2013, Defendant Ekwuno requested an additional $35,000 for the elevator, which Motir refused to pay. Again, on January 8, 2014, Defendant Ekwuno emailed Motir with a copy of the invoice for Schindler showing a balance of $41,914, which Defendant Ekwuno failed to pay in clear violation of the Contract. Defendant Ekwuno paid only $17,622 to Schindler and, in order to achieve installation of the elevator, Motir was forced to pay the balance to Schindler in the amount of $41,914. Because of the delay in payment and the significant delay in project completion, moreover, the original elevator was held in storage, at an additional cost of $12,489.00 paid for by Motir, and then sold to another customer. Thereafter, the ordering of a replacement elevator added to the delays of the project.

      36.     On December 16, 2013, Defendant Ekwuno emailed Motir stating that the project was 95% complete. Such a representation, Motir learned, was entirely false, based on the minimal progress that had been thus far achieved. In that same email, Defendant Ekwuno requested an additional $35,000 for the elevator, $10,000 for the conference room glass, $10,500

for the electrical heavy up, $1,800 for electrical miscellaneous, and $10,000 for miscellaneous labor.

37.     Motir responded to Defendant Ekwuno's email on December 17, 2013, voicing its concern with the accounting discrepancies, change orders paid for and left uncompleted, and the incredible delay in the project schedule.

38.     Defendant Ekwuno responded in a letter dated December 17, 2013, objecting to Motir's concerns and admitting that he grossly underbid the original project fee.

39.     With so many months of being overcharged and misled to believe the project could be completed in a timely manner by Defendant, on January 6, 2014, Motir reassigned current Motir employee David Molash to oversee the completion of the renovation, on a full-time basis.  At this juncture the building was a far cry from the level of completion represented by Defendant Ekwuno.  While the framing and plumbing were complete, the drywall was only partially completed, the electrical wiring was incorrect and had to be redone, the HVAC was only partially finished, and the building finishes were not completed.

40.     Defendant Ekwuno never returned to the project site after December 2013.

41.     It was not until April 2014 that Motir was able to complete the renovation project, and move its office personnel, from both its 601 Pennsylvania Avenue and 9225 Hampton Overlook locations, back into the building.

42.     On May 27, 2014, Motir sent a letter to Defendant Ekwuno, via email and certified mail, regarding the numerous project deficiencies, particularly in connection with the roof, HVAC, flooring, doors, electrical, elevator installation, and structure of the building.  In this letter Motir reminded Defendant Ekwuno that, pursuant to the Contract, Noble House agreed to provide a minimum one year warranty on the work performed on the project.

43.     Defendant Ekwuno elected not to respond to Motir's letter, instead, he directed a Mr. Rodney Brown from ABC Roofing to come to 1508 N. Capitol Street, NE on June 25, 2014, to fix the leaking roof.  With no communication from Defendant Ekwuno that someone was coming to fix the roof, Motir declined Mr. Brown's services and engaged its own vendor to repair the roof, Roof Solutions, at a cost of $3,000.00.  This repair unfortunately was only a stop-gap measure to stop the immediate leaking.  Based on Motir's consultation with Roof Solutions, the entire roof will need to be replaced in the near future.

44.     On December 15, 2014, Motir made one last effort to contact Defendant Ekwuno, sending him a letter regarding the significant issues with the workmanship on the project and his failure to achieve more than even half completion.  In this letter Motir requested that Defendant Ekwuno pay the balance due to Schindler, which Motir had already paid to Defendant Ekwuno, and compensate Motir for the numerous change orders Defendant Ekwuno failed to complete and the damages incurred due to Defendant Ekwuno's breach and default of the Contract.  Motir never received a response.

**Motir Incurred Significant Costs As A Result Of Defendants' Breach And Delay**

45.     Motir paid Defendant Ekwuno a total of $560,974,61 for the renovation of 1508 E. Capitol Street, NE, which Defendant Ekwuno performed in substandard fashion and left the project significantly behind schedule and only 60% complete.  In total, the overall cost to Motir to complete the Contract, including all monies paid to Defendant Ekwuno and to other vendors and subcontractors for additional materials and repair work thus far, is $ 775,980.48 and Motir endured almost a year-long delay.

46.     Due to Defendant Ekwuno's breach of contract and abandonment of the project, Motir incurred the following additional costs associated with the delay in project completion:

- $83,261.61 for the extended lease at 9225 Hampton Overlook, Capitol Heights, MD.  This lease was set to be terminated as soon as Motir moved back into 1508 E. Capitol Street, NE, anticipated to be June or July 2013.  Due to the project delays, it was necessary for Motir to extend the lease at a rate of $9,251.29 per month from August 2013 through April 2014.  All of the employees from 9225 Hampton Overlook were moved to 1508 E. Capitol Street, NE once the renovation was complete.

- $23,218.47 for the lease at 601 Pennsylvania Avenue.  This lease had to be obtained in order for Motir to properly perform its ongoing projects located in the District of Columbia.  As a result of the project delays, Motir had to extend this lease at a rate of $2,579.83 per month  from August 2013 through April 2014.  All of the employees from 601 Pennsylvania Avenue were moved to 1508 E. Capitol Street, NE once the renovation was complete.

- $9,927.50 for the cost of the Blight Resolution.  Due to the significant delays throughout the renovation project, DCRA assigned 1508 E. Capitol Street, NE to blight status.  To remove 1508 N. Capitol Street, NE from blight status, Motir needed to hire an attorney to assist at a cost of $9,927.50.

- $48,595.20 for the cost of the services of Mr. Molash, whom Motir paid to manage the completion of the renovation beginning when Defendant Ekwuno abandoned the project through completion, specifically from January 6, 2014 through April 27, 2014.

47.     Finally, per the review of reputable contractor Roof Solutions, in the near future Motir will need to replace the entire roof due to the consistent leaks, at an estimated cost of $55,199.00.

## COUNT I

### (Breach Of Contract)

48.     Motir alleges and incorporates by reference every allegation above as if fully set forth herein.

49.     The Contract is a valid, binding, and enforceable contract that was duly executed by Defendants and Motir.

50.     Therein, Defendants agreed to perform complete renovation of 1508 E. Capitol Street, NE per the terms of the Contract, for the sum of $450,000 plus any agreed-upon changes.

This enforceable Contract included a one year contractor warranty for all work performed by Defendants on the project.  Motir paid Defendants a total sum of $560,974, only to learn thereafter that the project was only about 60% complete at the time Defendant Ekwuno abandoned the project and that a significant portion of the work completed was substandard and needed to be redone.

51.     Motir, at all times, complied with its obligations under the Contract, including the payment of over $560,974 to Defendants.

52.     Defendants breached the Contract by failing to substantially complete the renovation project at 1508 N. Capitol Street, NE, in a timely manner according to the terms of the Contract.  Motir suffered significant damages as a result.

53.     Motir has been injured and has suffered significant damages as a result of Defendants' failure to complete the renovation per the terms of the Contract and the additional costs incurred to complete the project.

## COUNT II

### (Fraud)

54.     Motir alleges and incorporates by reference every allegation above as if fully set forth herein.

55.     Throughout the course of the project, Defendant Ekwuno repeatedly made false representations regarding the status of the project's completion.  Defendant Ekwuno also fraudulently charged Motir for several change orders which went uncompleted, and for several change orders which were not performed as directed in the change order.

56.     Defendant Ekwuno had full knowledge of these falsities.

57.     By engaging in these falsities, Defendant Ekwuno intended to fraudulently obtain payment for services which were either not rendered or rendered in an insufficient fashion.

58.    Motir relied on the representations of Defendant Ekwuno throughout the course of the project, and paid him additional monies as requested in reliance on the truth of these representations.

59.    Motir suffered significant damages as a result of its reliance.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff Motir Services, Inc. hereby respectfully requests that the Court:

(a)    Find that Defendants breached the Contract;

(b)    Award Motir damages in an amount to be determined at trial, plus costs and expenses; and

(c)    Grant Motir such other and further relief as the Court may deem just and proper, including damages, injunctive relief, costs, interest and attorneys' fees.

**JURY DEMAND**

The Plaintiff demands a trial by jury on all counts.

<div style="margin-left: 40%;">

Respectfully submitted,

Vedder Price PC

Caroline A. Keller

*Counsel for Motir Services, Inc.*

</div>

Caroline A. Keller
VEDDER PRICE PC
1401 I Street, NW
Suite 1100
Washington, DC  20005
Telephone:  (202) 313-3385
Facsimile:  (202) 313-3322
ckeller@vedderprice.com


Dated:  July 22, 2015

WASHINGTON_DC/#45519.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of July 2015, I caused to be served by hand delivery

the foregoing Complaint addressed as follows:

George Ekwuno                    The Noble House, LLC
9000 Green Run Way                8099 Snouffer School Road
Gaithersburg, MD  20879          Gaithersburg, MD  20879


_____
Caroline A. Keller