## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOTIR SERVICES, INC.<br><br>          Plaintiff,<br><br>          v.<br><br>GEORGE EKWUNO, *et al.*,<br><br>          Defendants. | Civil Action No. 15-1180 (BAH)<br><br>Chief Judge Beryl A. Howell |

### MEMORANDUM OPINION

The plaintiff, Motir Services, Inc. ("Motir"), brings this lawsuit against its former contractor, the defendants Noble House, LLC ("Noble House") and its sole owner, George Ekwuno, for breach of contract and fraud arising out of the defendants' conduct during construction renovations at the plaintiff's headquarters, a building in Washington, D.C. *See generally* Compl., ECF No. 1. In response, the defendants, represented by counsel, first filed a Motion to Dismiss for Lack of Diversity Jurisdiction, ECF No. 8, which the Court denied based on the undisputed facts that the defendants are citizens of Maryland and the plaintiff is a citizen of D.C., Minute Order (Oct. 23, 2016). The defendants then filed an Answer, ECF No. 11, and Ekwuno filed a second motion to dismiss, moving to dismiss the claims asserted against him in his personal capacity for failure to state a claim upon which relief can be granted, Def.'s Mot. Dismiss Compl. Against Him Individually ("Def.'s Mot."), ECF No. 12. After the filing of the second motion to dismiss, the defendants' counsel was granted leave to withdraw from the case and, despite cautions from the Court regarding the necessity for a corporation to be represented by counsel, *see* Minute Order (Dec. 2, 2015), no other counsel has entered an appearance for either defendant. Consequently, pending before the Court, in addition to Ekwuno's motion to dismiss, is the plaintiff's Motion for Entry of Default and Default Judgment, Pl.'s Mot. Default & Default J. ("Pl.'s Mot."), ECF No. 17,

against both defendants.  For the reasons discussed below, the Ekwuno's motion will be granted, and the Clerk will be directed to enter default and default judgment for the plaintiff against the remaining corporate defendant, pursuant to Federal Rule of Civil Procedure 55.

## I.      BACKGROUND

### A.      Factual Allegations

The plaintiff's corporate headquarters, which is located at 1508 E. Capitol Street, N.E., Washington, D.C., was damaged by a fire in 2011, requiring renovation of the building and relocation of personnel to another building.  Compl. ¶¶ 10–11.  The defendants submitted a bid "to supply all labor and material for the reconstruction" of the plaintiff's headquarters "at a fixed price of $450,000, to be performed per Motir-approved plans and specifications," with an "expected completion date 'within 6 (six) months of commencement,'" barring any "extenuating weather or environmental/governmental situations beyond [the defendants'] control."  *Id.* ¶¶ 14, 16; Answer ¶¶ 27, 29 (admitting allegations).  Ekwuno supplemented the bid, on December 12, 2012, with a cost breakdown for the quoted $450,000 renovation cost, as well as a preliminary schedule for the project.  Compl. ¶ 17; Answer ¶ 30 (admitting allegations).  Based on the bid and price quote, the plaintiff hired defendant Noble House, in a written contract, dated December 13, 2012, signed and executed by its "sole owner," Ekwuno, to perform the building renovations.  Compl. at 1 & ¶ 18; Answer ¶ 31 (admitting allegations); *see also* Pl.'s Mot., Ex. L-1, Contractor Agreement ("Contract") at 1, 12, ECF No. 17-12.[1]

---

[1]      Although the plaintiff did not attach the contract at issue to either its Complaint or briefing for the pending motion to dismiss, *see generally* Compl., Pl.'s Brief Opp'n Def.'s Mot. Dismiss Against Him Individually ("Pl.'s Opp'n"), ECF No. 13, the Court may nonetheless consider the Contractor Agreement ("Contract"), which was attached to the plaintiff's Motion for Entry of Default and Default Judgment, ECF No. 17.  A document outside a complaint may be considered on a motion to dismiss under Rule 12(b)(6), without converting the motion to one for summary judgment, if it is "referred to in the complaint" and is "integral to" the plaintiff's claim.  *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (explaining that courts should consider, "when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference"); *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007); *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006); *Saunders v. Mills*, 842 F. Supp. 2d 284, 293 n.2 (D.D.C. 2012); *Pearson v.*

### 1. *Contract Terms*

The Contract, which is governed by District of Columbia law, Compl. ¶ 25; Contract at 9, § 10.A, "includes a number of provisions emphasizing the importance of timely completion and strict performance" of the building renovation work "for the amount of $450,000, as detailed in the quote presented by Defendant Ekwuno," Compl. 18; Answer ¶ 31 (admitting allegations). The "Time of Performance" provision provides that "[t]ime is of the essence" and requires "the work under the Contract [to] be substantially complete[] no later than <u>six months</u> after commencement, or by June 13, 2013." Compl. ¶ 19 (emphasis in original); *see* Contract at 3, § 4. It further provides that "there shall be no extension of time for Contractor to perform the work without written consent from Owner indicating precise nature and length of time allowance other adjustments to the Contractor's Schedule of Work made in accordance with the Contract Documents." Compl. ¶ 19; *see* Contract at 3, § 4.

Another contract provision, titled "Contractor Warranties," governing the quality of the work and materials, provides that "all Work shall be performed in the most sound and workmanlike manner, and will adhere to established construction industry standards and applicable trade codes." Compl. ¶ 20; Contract at 3, § 5.A. This provision further provides that "[n]on-conforming work, which includes unauthorized work modifications and material substitutions, shall be considered defective;" the "materials and equipment furnished, installed, or otherwise provided . . . will be of good quality;" and "the work performed [will] be free of defects related to the requirements contained in the Contract Documents for a period of at least <u>one year</u> from the date of completion and acceptance of the project by" the plaintiff. Compl. ¶¶ 20–21 (emphasis in original; quotations omitted); *see* Contract at 3, § 5.A–B.

---

*District of Columbia*, 644 F. Supp. 2d 23, 29 n.1 (D.D.C. 2009). The Complaint here plainly refers to the Contract, *see* Compl. ¶¶ 18–25, and alleges that the defendants breached their obligations under the Contract, *id.* at 7–8.

Timely performance of and adequate workmanship under the Contract are further stressed by a provision providing "that in the event of a default by Noble House in the proper performance of work under the Contract, thereby causing delay or damages to Motir or other subcontractors working on the project, Noble House [will] be liable to Motir for any and all loss and damages so sustained."  Compl. ¶ 22; *see* Contract at 5, § 6.D(7).

Regarding payment, the Contract required the submission of monthly invoices in order to receive progress payments from the plaintiff, and "obligate[s] Defendant Noble House, in submitting contract invoices, to guarantee and certify that all labor and materials used on the project ha[ve] been paid for through the period covered by all Progress Payments issued up to that time, and to provide assurances to Motir to evidence this guarantee."  Compl. *¶ 22; see* Contract at 5, § 6.D(4).  A schedule for payment "draws," based on the completion of particular steps in the renovation, is outlined as follows: "$50,000 at the signing of the contract, $100,000 at the start of new construction, $70,000 at completion and inspection of electrical/plumbing rough-in and HVAC, $80,000 at completion and inspection of elevator installation, $70,000 at completion of drywall/trimming/painting, and $80,000 at final inspection and certificate of occupancy."  Compl. ¶ 23; *see* Contract at 4–5, § 6.D(1).  The Contract permits the plaintiff "to reject any Requests for Adjustments sought by Defendants, and, . . . require[] the Defendants to continue to perform the work under the Contract in accordance with the Contract Documents."  Compl. ¶ 24; *see* Contract at 8–9, § 8.F.

Notwithstanding the requirements of the Contract and the oral representations made to the plaintiff by Ekwuno, the plaintiff alleges that the defendants (1) performed substandard work on various aspects of the renovation, some of which required further construction to correct, Compl. ¶¶ 27–28, and (2) mismanaged project funds, *id.* ¶¶ 30–38, as detailed below.

### 2.   *Substandard Work Performance*

According to the plaintiff, the defendants performed substandard work, including incorrect installation of electric wiring, roofing, flooring, windows, water heater, furnace, "sump pump," doors, HVAC, insulation, elevator shaft, elevator pit, and gutters.  *Id.* ¶¶ 27–28.  This substandard work performance resulted in HVAC water leaks presenting a fire hazard, failure of the doors to meet industry standards, necessary replacement of approximately 72% of the electrical system to pass D.C. electrical inspections, uneven floors on three stories of the building, persistent roof leaks, and "significant damage" to the plaintiff's Information Technology system wiring.  *Id.*

### 3.   *Mismanagement of Project Funds*

The plaintiff alleges that, on approximately four occasions, Ekwuno requested additional funds in advance of the payment schedule established in the Contract, and beyond the agreed-upon price.  *See* Compl. ¶¶ 30–31, 35–36.  On three of those occasions, between June 2013 and December 2013, when requesting additional funds, Ekwuno allegedly misrepresented that the project was nearing completion.  *Id.*  ¶¶ 31, 33, 36.

Specifically, on March 19, 2013, Ekwuno requested half of the remaining renovation funds, claiming the money "was needed for materials for the project" and "to keep the project moving forward," even though "the Contract called for the final draw to be paid at the end of the project."  *Id.* ¶ 30.  The plaintiff allegedly "paid Defendant Ekwuno the requested amount because of its eagerness to see the project completed in a timely manner."  *Id.*

On the second occasion, three months later, on June 18, 2013, Ekwuno allegedly requested "the balance of the final draw," stating in an email to the plaintiff that "he would not be able to move forward with the project" without those funds, which were "needed for materials for the project."  *Id.* ¶ 31.  Ekwuno also allegedly stated in the email that "the project was 'exactly 6 weeks away from completion' and that if 'we have to stop and restart we will be set back at least a month

or more from the original completion target of end of July.'" *Id*. The Complaint does not indicate whether the plaintiff complied with Ekwuno's request.

The third occasion occurred a month later, on July 24, 2013, when Ekwuno again requested additional funds, at which point the plaintiff "began paying vendors directly for outstanding bills, specifically the HVAC, sprinkler & fire alarm, and steel vendors," which Ekwuno previously "claimed . . . to have paid." *Id.* ¶ 33. Ekwuno allegedly had not paid vendors "despite having already received 76% of the total contract price, or $344,100," and "a status report from Defendant Ekwuno," received by the plaintiff on July 26, 2013, allegedly "stat[ed] (again) that the renovation was six to eight weeks from completion." *Id.* ¶¶ 33–34.

Still, approximately five months later, on December 16, 2013, "Defendant Ekwuno emailed Motir [falsely] stating that the project was 95% complete" and requesting an additional $67,300 for the construction. *Id.* ¶ 36. The plaintiff responded the next day, on December 17, 2013, "voicing its concern with the accounting discrepancies, change orders paid for and left uncompleted, and the incredible delay in the project schedule." *Id*. ¶ 37. Ekwuno replied the same day, "objecting to Motir's concerns and admitting that he grossly underbid the original project fee." *Id*. ¶ 38; *see also* Pl.'s Mot., Ex. L-3 (correspondence between the parties, Dec. 16–18, 2013), ECF No. 17-12.

Also, on December 16, 2013, Ekwuno "requested an additional $35,000 for the elevator, which Motir refused to pay," since the plaintiff had already delivered, by August 22, 2013, four payments, totaling $88,300 "for an elevator that cost $62,671." Compl. ¶ 35. Thereafter, on January 8, 2014, Ekwuno "emailed Motir with a copy of the invoice for [the elevator supplier] showing a balance of $41,914, which Defendant Ekwuno [allegedly] failed to pay in clear violation of the Contract." *Id*. Since Ekwuno had allegedly "paid only $17,622" to the elevator supplier, the plaintiff was forced to pay the $41,914 balance "in order to achieve installation of the elevator," as well as an additional $12,489 for the cost of storing the original elevator. *Id*.

6

**4.** *Abandonment of Renovation Prior to Completion*

The defendants "never returned to the project site after December 2013." *Id.* ¶ 40. In order to complete the building renovations, on January 6, 2014, the plaintiff assigned one of its own employees "to oversee the completion of the renovation, on a full-time basis," which renovation was, at that time, "a far cry from the level of completion represented by Defendant Ekwuno." *Id.* ¶ 39. The plaintiff claims it was not able to complete the renovations and move its office personnel back into the building until April 2014, at which time "numerous project deficiencies, particularly in connection with roof, HVAC, flooring, doors, electrical, elevator installation, and structure of the building" still remained. *Id.* ¶¶ 41–42.

In the end, the plaintiff claims damages for (1) paying $560,974.61 to the defendants for substandard work and completion of only 60% of the project,[2] plus additional money to other vendors and subcontractors, totaling $775,980.48 for the project at the time of the filing of the Complaint, *id.* ¶ 45; (2) incurring additional costs of approximately $160,500 "[d]ue to Defendant Ekwuno's breach of contract and abandonment of the project," *id.* ¶ 46; and (3) additional anticipated costs of approximately $55,199 "to replace the entire roof due to the consistent leaks," *id.* ¶ 47.

**B.    Procedural History**

On July 22, 2015, the plaintiff filed the instant Complaint asserting two claims: (1) breach of contract against both defendants; and (2) fraud against Ekwuno. Compl. ¶¶ 48–59. In response, the defendants, then represented by counsel, filed a motion to dismiss for lack of diversity

---

[2]     The defendants' stance on the amount of payment is contradictory. While the defendants claim they have "insufficient information with which to either admit or deny" the plaintiff's allegation in paragraph 45 of the Complaint that the plaintiff paid defendant Ekwuno $560,974.61, Answer ¶ 37 (responding to Compl. ¶ 45), the defendants nevertheless admit the allegations in paragraph 50 of the Complaint that "Motir paid Defendants a total sum of $560,974, only to learn thereafter that the project was only about 60% complete at the time Defendant Ekwuno abandoned the project and that a significant portion of the work completed was substandard and needed to be redone." Compl. ¶ 50; *see* Answer ¶ 42 (admitting allegations).

jurisdiction on behalf of both defendants, ECF No. 8, which this Court denied in a Minute Order on October 23, 2015.  Shortly thereafter, on November 6, 2015, the same defense counsel filed an Answer, ECF No. 11, on behalf of both defendants, as well as the pending motion to dismiss the claims against Ekwuno, Def.'s Mot., ECF No. 12, which claims had not been raised in the earlier motion to dismiss.

A few weeks later, on November 24, 2015, after the plaintiff's opposition but before any reply in support of the Ekwuno's motion was filed, the defendants' counsel moved to withdraw "[d]ue to the Defendants [sic] inability to communicate with counsel and properly aid in his defense," asserting that "the Defendant has become uncooperative and unresponsive to numerous requests for documentation as well as requests for response to counsel's communication."  Mot. Withdraw Appearance Counsel ("Mot. Withdraw") at 1, ECF No. 14.  In accordance with Local Civil Rule 83.6, counsel certified that he "mailed to the Defendants, at their current addresses, his written notice stating his intention to move for withdrawal in this matter and advising Defendants to seek other counsel or notify the Court if they intent to represent themselves *pro se*."  *Id.*; *see id.*, Ex. 1, ECF No. 14-1 (letter from counsel to defendants advising them "to retain other counsel, or if you intend to represent yourself or object to my withdrawal, . . .  you must notify the Clerk in writing within seven (7) days of service of the enclosed Motion to Withdraw").  Defense counsel's motion to withdraw was granted, on December 2, 2015, and the defendants were provided an opportunity to obtain new counsel, with directions "to notify the Court, by December 11, 2015, whether they have obtained other counsel and/or whether the individual defendant intends to proceed *pro se*."  Minute Order (Dec. 2, 2015).  The defendants were "cautioned that corporate entities are not permitted to appear *pro se* and that, absent counsel, default judgment may be entered against the corporate defendant."  *Id.* (citing *Lennon v. McClory*, 3 F. Supp. 2d 1461, 1462 n.1 (D.D.C. 1998)).  The defendants failed to comply with the Court's Order or communicate with the Court or opposing

counsel regarding their representation or any other matter.  *See* Pl.'s Notice to the Court, ECF No. 16.

Over three months later, on March 25, 2016, the plaintiff filed the pending Motion for Entry of Default and Default Judgment, ECF No. 17, against both defendants, pursuant to Federal Rule of Civil Procedure 55.  Subsequently, five months after the Court's December, 2014 Order and almost one month after the filing of the motion for entry of default, on April 18, 2016, Ekwuno, on behalf of both himself and the corporate defendant, communicated with opposing counsel and the Court, requesting a ten-day stay of proceedings because he was "in the process of trying to hire counsel to represent [him]."  Pl.'s Resp. Defs.' Req. Extension Time Respond Pl.'s Mot. Entry Default & Default J., ECF No. 18; Defs.' Letter (Apr. 18, 2016), ECF No. 19 (construed as a "motion to stay for 10 days").  This request was denied since "[t]he defendants ha[d] offered no explanation for their failure to respond to the Court's December 2, 2015 Order or for any delay in obtaining other counsel in this matter."  Minute Order (Apr. 20, 2016).  In any event, the defendants have made no further effort to submit a reply in support of Ekwuno's motion to dismiss or opposition to entry of default judgment, nor has any counsel entered an appearance on behalf of either defendant.

Both motions are now ripe for review.

## II.  LEGAL STANDARD

### A.  Failure to State a Claim Under Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," to encourage brevity and, at the same time, "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipses in original; internal quotations and citations omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 319 (2007).  The Supreme Court has cautioned that although "Rule 8 marks a notable and generous

departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (quoting *Iqbal*, 556 U.S. at 678).  A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability," but allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).

Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" or "formulaic recitation of the elements of a cause of action" to provide "grounds" of "entitle[ment] to relief," *Twombly*, 550 U.S. at 555 (alteration in original), and "nudge[ ] [the] claims across the line from conceivable to plausible," *id.* at 570.  Thus, "a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  In considering a motion to dismiss for failure to plead a claim on which relief can be granted, the court must consider the complaint in its entirety, accepting all factual allegations in the complaint as true, even if doubtful in fact. *Twombly* at 555; *Sissel v. HHS*, 760 F.3d 1, 4 (D.C. Cir. 2014) (in considering Rule 12(b)(6) motion, the "court assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor, but is not required to accept the plaintiff's legal conclusions as correct") (internal quotations and citations omitted).

**B.     Default and Default Judgment Under Rule 55**

The Federal Rules of Civil Procedure "provide for default judgments . . . [to] safeguard plaintiffs 'when the adversary process has been halted because of an essentially unresponsive party,'" and to protect "'the diligent party . . . lest he be faced with interminable delay and continued uncertainty as to his rights.'"  *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).  Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  FED. R. CIV. P. 55(a); *see* 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2682 (3d ed. 1998) ("When the prerequisites of Rule 55(a) are satisfied, an entry of default should be made by the clerk without any action being taken by the court, . . . [as long as] the clerk [has] examine[d] the affidavits filed and [found] that they meet the requirements of Rule 55(a).").  "An entry of default is merely a formal matter and does not constitute the entry of judgment."  WRIGHT, *supra*.  Following the entry of default, judgment may be entered by the clerk or the Court.  FED. R. CIV. P. 55(b).  "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person."  FED. R. CIV. P. 55(b)(1).  "In all other cases, the party must apply to the court for a default judgment."  FED. R. CIV. P. 55(b)(2).

**III.     DISCUSSION**

Since the unrepresented corporate defendant in this case has no pending motion to dismiss and, despite warning and ample time, has failed to obtain counsel, the Court first addresses the

plaintiff's motion for default and default judgment with respect to the corporate defendant, before turning to the individual defendant's motion to dismiss.

### A.      Plaintiff's Motion for Default and Default Judgment

As discussed above in Part I.B, *supra*, the defendants filed an Answer in the instant case on November 11, 2015.  Approximately two weeks later, defense counsel moved to withdraw, stating that the defendants had "become uncooperative and unresponsive to numerous requests for documentation" and "to counsel's communication."  Mot. Withdraw at 1; Minute Order (Dec. 2, 2015).  Defense counsel provided notice to the defendants of his motion for withdrawal, "advising the Defendants to obtain other counsel, or if the Defendants intend to represent themselves or to object to the withdraw, to notify the Clerk of the Court in writing within seven (7) days of the service of th[e] Motion," which motion was mailed to the defendants by defense counsel on November 24, 2015.  Mot. Withdraw at 2.  The Court granted defense counsel's motion and provided the defendants with additional time beyond the seven days provided by the local rules, *see* Local Civil Rule 83.6(d), ordering the defendants to notify the Court as to how they intended to proceed by December 11, 2015.  Minute Order (Dec. 2, 2015).  The Court further cautioned the defendants "that corporate entities are not permitted to appear pro se and that, absent counsel, default judgment may be entered against the corporate defendant."  *Id.* (citing *Lennon v. McClory*, 3 F. Supp. 2d 1461, 1462 n.1 (D.D.C. 1998) ("A corporation cannot represent itself and cannot appear *pro se*.  It must be represented by counsel or it will be treated as not having appeared at all, and default judgment may be entered against it.")).  The defendants failed to comply with the Court's order.

Four weeks later, on January 11, 2016, the plaintiff notified the Court that the defendants had also failed to comply with the Court's Scheduling Order, which required the parties to "file initial disclosures by December 3, 2015."  Minute Order (Nov. 10, 2016); Pl.'s Notice at 1, ECF

No. 16.  The plaintiff further expressed its desire "to file a Motion for Default Judgment against Defendant The Noble House, LLC if Defendants continue to refuse to communicate regarding a substitution of counsel."  Pl.'s Notice at 1–2.  The plaintiff served this Notice on both defendants, *id*. at 3, and ultimately filed, on March 25, 2016, the pending motion for entry of default and default judgment, ECF No. 17, against both defendants.

From November 24, 2015, when defense counsel moved to withdraw, until April 19, 2016, when Ekwuno filed a letter on behalf of both himself and the corporate defendant requesting a ten-day stay of the case—that is, for almost five months—the defendants failed to participate in this litigation.  When they did finally communicate with the Court, they provided no explanation whatsoever for their failures to comply with this Court's Orders or to otherwise defend themselves in this action, *see* Defs.' Letter, and though the Court denied their request for a ten-day stay, Minute Order (Apr. 20, 2016), an additional seven weeks have passed and the defendants have still, despite this extra time, failed to comply with the Court's Orders or respond to the plaintiff's pending motion.

"[I]t is well settled that 'a corporation may appear in the federal courts *only* through licensed counsel.'"  *Nat'l Sec. Counselors v. CIA*, 811 F.3d 22, 31 (D.C. Cir. 2016) (emphasis in original) (quoting *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201–02 (1993)).  Without counsel, the corporate defendant in this case has failed to appear.  *See Lennon*, 3 F. Supp. 2d at 1462 n.1 ("[An unrepresented corporation] will be treated as not having appeared at all, and default judgment may be entered against it." (citing *Rowland*, 506 U.S. at 201–02)).  Accordingly, the Court will direct the Clerk to enter the corporate defendant's default, pursuant to Federal Rule of Civil Procedure 55(a), and enter judgment for the plaintiff against the corporate defendant, pursuant to Federal Rule of Civil Procedure 55(b)(1).

## B.     Ekwuno's Motion to Dismiss

The individual defendant, Ekwuno, has moved to dismiss both the breach of contract and fraud causes of action against him.  Defs.' Mot. ¶¶ 15–17, 24, 33.  For the reasons discussed below, Ekwuno's motion is granted.

### 1.     *Breach of Contract*

Generally, under District of Columbia law, "the corporate entity and the natural persons who compose the corporation will be looked upon as separate and distinct until sufficient reason to the contrary appears." *McAuliffe v. C & K Builders, Inc.*, 142 A.2d 605, 607 (D.C. 1958).  Thus, corporate shareholders are not personally liable for a corporation's breach of contract.  *See Lawlor v. District of Columbia*, 758 A.2d 964, 975 (D.C. 2000) ("'The general rule is that a corporation is regarded as an entity separate and distinct from its shareholders.'" (quoting *Vuitch v. Furr*, 482 A.2d 811, 815 (D.C. 1984))).[3]  "This 'fiction,' by which the law treats a corporation as a separate person, allows individuals to invest in the entity without exposing themselves to full personal liability[,]" limiting their liability "to their investment in the corporation." *Camacho v. 1440 R.I. Ave. Corp.*, 620 A.2d 242, 248 n.19 (D.C. 1993).  Corporate shareholders may nonetheless be personally liable under an "alter ego" theory of liability, which "[c]ourts apply . . . to 'cast aside the corporate shield.'" *Estate of Raleigh v. Mitchell*, 947 A.2d 464, 470 (D.C. 2008) (quoting 1 WILLIAM MEADE FLETCHER, ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 41.35 (perm. ed., rev. 2006)); *see also Chase v. Gilbert*, 499 A.2d 1203, 1210 (D.C. 1985) ("Th[e] general

---

[3]     Similarly, corporate officers or employees are generally not personally liable for a corporation's breach of contract.  *See Ridgewells Caterer, Inc. v. Nelson*, 688 F. Supp. 760, 762 (D.D.C. 1988) ("It is a general principle of corporation law that the officers and employees of a corporate entity are its agents . . . . [and] an agent is not personally liable on a contract it executes on behalf of a principal so long as it identifies the principal and discloses the agency relationship." (citations omitted)).  Here, the plaintiff does not seek to hold Ekwuno personally liable as a corporate officer, nor could it, as the plaintiff acknowledges that (1) though the initial price quote submitted to the plaintiff was signed by Ekwuno, the price quote was submitted by the corporate defendant, *see* Compl. ¶ 14; and (2) the contract at issue was executed through Ekwuno's signature on behalf of the corporate defendant, *see id.* ¶ 18.  Thus, the Court addresses Ekwuno's potential liability as a shareholder of the corporate defendant.

rule may be disregarded where the corporation is an alter ego of the shareholders and is a mere sham used by the shareholders to work an injustice.").

The plaintiff bases the breach of contract claim against Ekwuno on this "alter ego" theory. *See* Compl. ¶ 4 ("Upon information and belief, Noble House merely serves as an alter ego for Defendant Ekwuno, with a co-mingling of assets and no separation of identities."). To "pierce the corporate veil" and hold Ekwuno personally liable, the plaintiff must show "'that there is (1) unity of ownership and interest, and (2) [either] use of the corporate form to perpetrate fraud or wrong,'" or that "considerations of justice and equity . . . justify piercing the corporate veil." *Bingham v. Goldberg. Marchesano. Kohlman. Inc.*, 637 A.2d 81, 93 (D.C. 1994) (quoting *Vuitch v. Furr*, 482 A.2d 811, 815 (D.C. 1984)); *see Estate of Raleigh*, 947 A.2d at 470.

Determining whether a plaintiff has met this test to show that a corporation is the alter ego of its shareholder, requires consideration of "various factors." *Estate of Raleigh*, 947 A.2d at 471. "Although no single factor controls, courts generally inquire, *inter alia*, whether corporate formalities have been observed; whether there has been commingling of corporate and shareholder funds, staff and property; whether a single shareholder dominates the corporation; whether the corporation is adequately capitalized; and, especially, whether the corporate form has been used to effectuate a fraud." *Lawlor*, 758 A.2d at 975; *see also Estate of Raleigh*, 947 A.2d at 471 (noting consideration of whether the corporation has been used fraudulently "to protect personal business"). As the D.C. Court of Appeals has explained, "[b]ecause piercing the corporate veil is a doctrine of equity, the factor which predominates will vary in each case, and the decision to pierce will be influenced by considerations of who should bear the risk of loss and what degree of legitimacy exists for those claiming the limited liability protection of a corporation." *Vuitch*, 482 A.2d at 815–16.

Ultimately, "'it must appear that the corporation is not only controlled by [the individual defendant], but also that the separateness of the [individual] and the corporation has ceased and adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice.'" *Camacho*, 620 A.2d at 249 (quoting *Vuitch*, 482 A.2d at 815); *see Vuitch*, 482 A.2d at 815 n.4 ("'[A] corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears; but, when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons.'" (quoting *Callas v. Indep. Taxi Owners Ass'n*, 66 F.2d 192, 193 (D.C. Cir. 1933))).

Here, the paucity of factual allegations is insufficient to support an alter ego theory of liability for Ekwuno. Although a plaintiff need not "show at the pleadings stage . . . [that which] he needs to show to prevail at trial," the plaintiff must still allege sufficient facts regarding an alter ego relationship to "satisfy Rule 8(a)(2) and *Iqbal*." *McWilliams Ballard, Inc. v. Broadway Mgmt. Co.*, 636 F. Supp. 2d 1, 8–9 (D.D.C. 2009); *see also Regan v. Spicer HB, LLC*, 134 F. Supp. 3d 21, 40 (D.D.C. 2015). Instead, the plaintiff in this case relies primarily on a single, conclusory allegation that "Noble House merely serves as an alter ego for Defendant Ekwuno, with a co-mingling of assets and no separation of identities." Compl. ¶ 4; *see* Def.'s Mot. ¶ 14 (arguing that plaintiff "merely recited elements of alter-ego liability as conclusory allegations without factual support"). Such reliance on a legal conclusion is insufficient to provide the requisite factual support, particularly for what the D.C. Circuit has described as an "extraordinary" measure. *Schattner v. Girard*, 668 F.2d 1366, 1370 (D.C. Cir. 1981) ("Veil-piercing is an extraordinary procedure that is not to be use lightly[.] . . . [The] case [must] present[] the extreme circumstances that call for disregard of the corporate form."). Moreover, such conclusory allegations about an ultimate legal question need not be accepted as true and correct in evaluating a motion to dismiss. *See Nurriddin*

16

*v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (the court need not "accept legal conclusions couched as factual allegations") (citing *Iqbal*, 556 U.S. at 678).

Aside from the one conclusory allegation, the plaintiff alleges that Ekwuno is the "sole owner" of the corporate defendant, Compl. at 1, and indirectly suggests that all of the parties' communications and dealings were with Ekwuno by not referencing any other corporate agent or representative, *see* Compl. ¶¶ 14, 17–18, 29–31, 34, 36.  The Complaint lacks any factual allegations indicating that corporate formalities were disregarded, that the corporate defendant was purposely undercapitalized, or that the corporate defendant's funds and assets were mingled with Ekwuno's or diverted for non-corporate or personal uses.  The plaintiff even acknowledges that Ekwuno has a separate address from the corporate defendant, *see* Compl. ¶ 3, by contrast to other cases where shared office space has been deemed relevant to the alter ego determination, *see Camacho*, 620 A.2d at 249 n.22.

The plaintiff asserts in its opposition to Ekwuno's motion that, "[a]s will be demonstrated during the discovery process, Motir issued checks to both Defendant Ekwuno and Defendant Noble House as payment for work associated with the project," and also that "Defendant Ekwuno signed various documents in connection with the project, both in his individual capacity and on behalf of Defendant Noble House."  Pl.'s Opp'n at 3–4.  These allegations, which the plaintiff could have easily made without any discovery whatsoever, are nowhere in the Complaint, however.  Notably, in light of the defendants' ongoing failure to participate in this case, the plaintiff had ample time and opportunity to amend the Complaint; it may not amend the Complaint through its opposition to the motion to dismiss.  *See Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006) ("[R]equest[s] in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—do[] not constitute a motion within the contemplation of Rule 15(a).").  In any event, the plaintiff's new allegations add little, if any, support for the plaintiff's claim.

17

The plaintiff has not sufficiently alleged, most importantly, that Ekwuno used the corporate form to perpetrate fraud or that justice and equity warrant piercing the corporate veil. As the D.C. Circuit recently explained, "[a] corporation is 'viewed as a distinct entity, even when it is wholly owned by a single individual,'" and "the law takes seriously the formal line between a corporation and a natural person, even when the corporation is, in effect, a one-person firm." *Nat'l Security Counselors v. CIA*, 811 F.3d at 31 (quoting *Quinn v. Butz*, 510 F. 2d 743, 757 (D.C. Cir. 1975)). "One-person corporations are authorized by law" and individuals who "expend time and resources" to create and incorporate a corporation "experience burdens as well as benefits associated with the separation between a company's rights and their own." *Id.* As a result, "[o]ne-person corporations . . . should not lightly be labeled a sham," *id.*, and a plaintiff must allege some injustice or inequity warranting intrusion into the legally distinct identities of a corporation and its sole owner—beyond unity of ownership and interest—to allege sufficiently an alter ego theory of liability, *see Camacho*, 620 A.2d at 249; *Vuitch*, 482 A.2d at 815–16. While "[t]he court may ignore the existence of the corporate form whenever an individual so dominates an organization 'as in reality to negate its separate personality,'" *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 897 (D.C. Cir. 2010) (quoting *Founding Church of Scientology of Wash., D.C., Inc. v. Webster*, 802 F.2d 1448, 1452 (D.C. Cir. 1986)), such a situation must be distinguished from that "merely of single ownership, or of deliberate adoption and use of a corporate form in order to secure its legitimate advantages," *Quinn*, 510 F. 2d at 758.

This case illustrates precisely a burden, as well as a benefit, associated with the legally distinct identities of a corporation and its sole owner. As discussed above, default judgment will be entered against the corporate defendant because, as a corporate entity, it has no right to appear *pro se*. The sole owner of the company is undoubtedly burdened by this. On the other hand, the sole owner should rightfully be shielded by the corporation from personal liability for legitimate

business dealings, unless good cause exists to believe he has abused the corporate form in conducting those dealings.

The plaintiff's allegations that Ekwuno performed substandard construction work, "made false representations to the Plaintiff about the status of the project's completion, . . . misrepresented payments to venders, and . . . fraudulently charged the Plaintiff for various change orders," Def.'s Mot. ¶ 7 (citing Compl. ¶¶ 29–44); *see* Pl.'s Opp'n at 2 ("Defendant Ekwuno repeatedly fraudulently misrepresented to Motir the projects progress and payments to vendors." (citing Compl. ¶¶ 30–36)), simply do not constitute abuse of the corporate form and are insufficient, without more, to warrant piercing the corporate veil.  The plaintiff makes no allegation that Ekwuno used the corporate form to perpetrate his alleged wrongdoing, or that he used the corporate defendant as an instrumentality with which to commit fraud.  *See Vuitch*, 482 A.2d at 815 n.4 ("'[I]t is the *use* to which the corporate form is put which controls . . . .'" (emphasis in original) (quoting *Francis O. Day Co. v. Shapiro*, 267 F.2d 669, 672 (D.C. Cir. 1959)); *cf. Quinn*, 510 F.2d at 758–59 (explaining that, while "[p]enetration of the corporate veil is a step to be taken cautiously," courts will pierce the corporate veil "[w]hen, at some innocent party's expense, the corporation is converted into . . . an instrumentality" used with "such domination . . . as in reality to negate its separate personality").  By contrast, the allegations recognize Ekwuno's use of the construction company defendant to perform, albeit incompetently, unprofessionally, and/or unethically, construction work.  *See* Compl. ¶ 5 ("To the best of Motir's knowledge, Defendant Ekwuno is an experienced contractor . . . .").  Indeed, as discussed below in Part III.B.2, *infra*, all of the plaintiff's allegations of Ekwuno's wrongdoing arise in direct connection with his performance of the corporate defendant's legitimate contract obligations.  *Cf. Jefferson v. Collins*, 905 F. Supp. 2d 269, 278 (D.D.C. 2012) (finding plaintiff alleged sufficient facts "to state a plausible claim of alter ego liability" where, in addition to adequate factual allegations of unity of ownership and interest, the

plaintiff alleged that the individual defendant "fraudulently induced the plaintiffs to enter into" the contract with the corporate defendant).

Consequently, the plaintiff has not provided sufficient factual content from which the Court may "draw the reasonable inference" that Ekwuno disregarded corporate formalities or unfairly used the corporate defendant such that the corporate defendant merely served as his alter ego, *Iqbal*, 556 U.S. at 678, and Ekwuno's motion to dismiss the breach of contract claim is granted.

### 2.    *Fraud*

The plaintiff's fraud claim is based on allegations that, "[t]hroughout the course of the project, Defendant Ekwuno repeatedly made false representations regarding the status of completion," and "also fraudulently charged Motir for several change orders which went uncompleted, and for several change orders which were not performed as directed in the change order." Compl. ¶ 55. The plaintiff additionally alleges that "Defendant Ekwuno had full knowledge of these falsities," and that they were made "fraudulently [to] obtain payment for services which were either not rendered or rendered in an insufficient fashion." *Id.* ¶¶ 56–57. Ekwuno argues that the plaintiff's fraud claim must be dismissed for failing to plead a factual basis independent from the breach of contract claim. Def.'s Mot. ¶¶ 25–32. The Court agrees with Ekwuno.

Although "conduct occurring during the course of a contract dispute may be the subject of a fraudulent or negligent misrepresentation claim," the facts supporting that claim must be "separable from the terms of the contract." *Araya v. JPMorgan Chase Bank, N.A.*, 775 F.3d 409, 418 (D.C. Cir. 2014) (quoting *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008)). "District of Columbia law requires that the factual basis for a fraud claim be separate from any breach of contract claim that may be asserted." *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 113 (D.D.C. 2010); *see Choharis*, 961 A.2d at 1089 ("[T]he tort must exist in its own right independent

of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship."). In other words, "[t]he tort must stand as a tort even if the contractual relationship did not exist," such that "an action for breach of contract would reach none of the damages suffered by the tort," *Choharis*, 961 A.2d at 1089; *see Jacobson v. Hofgard*, No. 15-cv-00764, 2016 WL 837923, at *7 (D.D.C. Mar. 1, 2016) (dismissing fraud claims where the plaintiffs alleged fraudulent statements "duplicative of their breach of contract claim" because the statements in question "directly involve[d] the terms and conditions" of the disputed contract); *Choharis*, 961 A.2d at 1089 ("[T]he injury to the plaintiff must be 'an independent injury over and above the mere disappointment of the plaintiff's hope to receive his contracted-for benefit.'" (citation omitted)).

The plaintiff's allegations of fraud in this case are inseparable from the breach of contract allegations and directly involve duties expressly contemplated by the contract. First, as the plaintiff explains, the contract includes "a number of provisions emphasizing the importance of timely completion" of the renovation. Compl. ¶ 18. Specific terms governing time of performance include that "the work under the Contract would be substantially completed no more than <u>six months</u> after commencement, or by June 13, 2013," and prohibit any extension of time "without written consent from Owner indicating precise nature and length of time allowance or other adjustments to the Contractor's Schedule of Work made in accordance with the contract documents." *Id.* ¶ 19 (emphasis in original). Thus, Ekwuno's alleged fraudulent statements regarding the project's status, *id.* ¶¶ 31, 33, 36, directly involve the terms of the parties' contract.

Similarly, the plaintiff's contention that Ekwuno fraudulently sought and obtained funds for incomplete or inadequate work, *see* Compl. ¶ 57 (alleging that Ekwuno "intended to fraudulently obtain payment for services which were either not rendered or rendered in an insufficient fashion"), does not "exist in its own right independent of the contract . . . [or] flow from considerations other than the contractual relationship," *Choharis*, 961 A.2d at 1089. Contract provisions govern the

quality of work and materials, as well as the plaintiff's ability to "reject any Requests for Adjustment" by the defendants.  Compl. ¶¶ 20–21, 24.  As a result, the plaintiff's assertion that Ekwuno fraudulently sought to be paid for incomplete or substandard work, which directly implicates provisions within the Contract, has no factually independent basis from the plaintiff's breach of contract claim.

The plaintiff contends that it need not show an independent basis for its fraud claim "at this stage of the litigation" because under "D.C. law corporate officers may be held personally liable for torts committed via acts performed in the name of the corporation" and a complaint alleging fraud need only include "'the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud[,] . . . and identify individuals allegedly involved in the fraud.'"  Pl.'s Opp'n at 7–8 (citing *McWilliams Ballard*, 636 F. Supp. 2d at 5).  Though the plaintiff correctly identifies the "heightened pleading requirement for fraud" claims under Federal Rules of Civil Procedure 9(b), *see U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1255–56 (D.C. Cir. 2004), it neglects the requirement of D.C. contract law that fraud claims must be supported by "facts separable from the terms of the contract." *Choharis*, 961 A.2d at 1089.

This case is similar to *Choharis*, in which the D.C. Court of Appeals affirmed a lower court's award of summary judgment to a defendant insurance company on a plaintiff's fraud claim, thereby "declining to recognize a tort action in a first party breach of contract situation."  961 A.2d at 1088.  The court found that the plaintiff could not rely on the defendant's "delayed payments or refusal to make payments" to support his fraud claim because "even a 'willful, wanton or malicious' breach of a contract to pay money cannot support a claim of fraud." *Id.* at 1089.  The court similarly found that the plaintiff could not rely on the defendant's misstatements "related directly to the question of interim living expenses provided for in the contract" or knowingly false

representations "about the absence of mold" to support his fraud claim because "[a]ny misstatements with respect thereto which resulted in added expense to [the plaintiff] that he would not otherwise have had to bear would be potentially compensable under contract principles." *Id.* at 1090.

The plaintiff attempts to distinguish *Choharis* on two grounds, neither of which is persuasive.  First, the plaintiff points to the differing procedural postures:  *Choharis* is a decision on a motion for summary judgment, as opposed to, as here, a motion to dismiss.  Pl.'s Opp'n at 8.  The same legal principles apply to fraud claims at both stages of litigation, however.  *See Jacobson*, 2016 WL 837923, at *1–2; *Plesha*, 725 F. Supp. 2d at 110–11.  Second, the plaintiff argues that "the tort alleged by plaintiff in *Choharis* relates to statements allegedly made in connection with the breach of contract alleged by plaintiff for the insurance company's <u>refusal to make payments</u> following the submission of an insurance claim," rather than, as here, alleged "fraudulent statements to <u>induce Plaintiff to make payment</u> to Defendants for substandard construction work."  Pl.'s Opp'n at 8 (emphasis in original).  The nature of the contract breach is not dispositive, however.  The plaintiff cites to no authority, and the Court can find none, to support the plaintiff's assertion that a party's failure to make payments as required under an insurance contract is distinguishable from a party's failure to perform as required under a construction contract, such that a plaintiff in the latter situation should be exempt from pleading an independent factual basis for its tort claim.  Indeed, the plaintiff even admits in its opposition that Ekwuno "made fraudulent statements to induce Plaintiff to make payment to Defendants for substandard construction work or work *that Defendants failed to complete per the contract's terms*."  Pl.'s Opp'n at 8 (emphasis added).

Courts have consistently found allegations of even intentional misconduct and misrepresentations made in conjunction with the performance of a party's duties under a real estate contract to be insufficient to establish a claim for fraud.  *See Regan v. Spicer HB, LLC*, 134 F. Supp.

3d 21, 39 (D.D.C. 2015) (dismissing the plaintiff's negligence claim that the defendant "real estate professional" breached a duty to renovate the property "in a workmanlike manner" because the plaintiff "point[ed] to no source of law that would create such a duty outside of the contractual relationship established between the parties" and could not "recover in tort for damages suffered as a result of the contractual relationship" (quotations omitted) (citing *Choharis*, 961 A.2d at 1089)); *Slinski v. Bank of Am., N.A.*, 981 F. Supp. 2d 19, 32 (D.D.C. 2013) (dismissing fraud claim against Freddie Mac for "misrepresenting its intention to sell the condominium" because "District of Columbia law . . . requir[es] 'an independent injury over and above the mere disappointment of a plaintiff's hope to receive his contracted-for benefit' to support a claim of fraud" (quoting *Choharis*, 961 A.2d at 1089)); *Di Sciullo v. Griggs & Co. Homes, Inc.*, 2015 U.S. Dist. LEXIS 143741, at *25–30 (E.D.N.C. Oct. 22, 2015) (finding allegations that the defendants "intentionally conducted and misrepresented a fraudulent billing process" and "mishandled the advance deposit and misrepresented their treatment of it" were insufficient to establish a fraud claim because the "defendants made the representations in conjunction with their course of performance and based upon an interpretation of their rights and obligations under the [construction] contract" and such evidence of wrongdoing should, instead, be considered in the context of the breach of contract claim).

In sum, since the plaintiff's allegations of Ekwuno's fraud relate to the timing of the renovation's completion, payments rendered for the renovation, and the quality of the work performed, all of which are contemplated within and governed by the terms of the parties' Contract, the fraud claim does not have an independent factual basis from the breach of contract claim and must be dismissed. *See Plesha*, 725 F. Supp. 2d at 113; *Choharis*, 961 A.2d 1089.

IV.    **CONCLUSION**

For the reasons discussed above, and given the corporate defendant's repeated failures to comply with this Court's Orders, and its now six-month-long failure to obtain counsel, the Clerk is directed to enter default and judgment against the corporate defendant for the sum certain specified in the plaintiff's motion.  *See* Pl.'s Mot. at 3 & Ex. L, Aff. of Emmanuel Irono (Mar. 25, 2016) ¶¶ 13–16, ECF No. 17-12.  In addition, Ekwuno's motion to dismiss the claims against him, ECF No. 12, is granted.  Accordingly, the plaintiff's breach of contract and fraud claims against Ekwuno are dismissed without prejudice.  *See Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012) ("[T]he standard for dismissing a complaint with prejudice is high: dismissal with prejudice is warranted only when . . . the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." (quotations omitted) (quoting *Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006))).  The plaintiff's motion for default and default judgment with respect to Ekwuno is denied as moot.

An appropriate Order accompanies this Memorandum Opinion.

Date:  June 10, 2016

_____
BERYL A. HOWELL
Chief Judge